BEFORE THE FIRST DIVISION, MAY 10, 1948

**No. 52320.**—Loew's, Inc., Frank P. Dow Co., Inc. *v*. United States, petition 6521-R (Los Angeles).

OLIVER, Presiding Judge: This is a petition for remission of additional duties filed pursuant to section 489, Tariff Act of 1930, which duties accrued by reason of the undervaluation on entry of certain huaraches imported from Mexico and entered at Los Angeles on April 26, 1945, by Frank P. Dow Co., Inc., customs brokers, for the account of Loew's, Inc. The record discloses that the total entered value was based upon an invoice (exhibit 2) in the sum of 393.43 Mexican pesos, whereas the actual purchase price paid as shown by the invoice represented by exhibit 1 herein was 786.87 Mexican pesos.

Section 489, Tariff Act of 1930, reads in part as follows:

* * * Such additional duties * * * shall not be remitted nor payment thereof in any way avoided, except * * * or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final

appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, * * *.

The witness Barnett, a clerk employed by Massce & Co., forwarding agent in Los Angeles, testified that documents covering the shipment at bar were sent to his firm by a customs broker in Mexico City and that upon receipt of such documents he then tore off "in our usual manner" an invoice which was on top of and attached to the documents and forwarded it to their customs broker, Frank P. Dow Co., Inc., for the purpose of making entry of the merchandise in question. Two photostatic copies of invoices contained in the documents were introduced in evidence as respondent's exhibits 1 and 2. It appears that these invoices which were pinned together were received from the Mexican broker the day before the shipment arrived and the invoice which was sent to the customs broker to make entry (exhibit 2) did not set forth the correct price paid for the huaraches in question, but disclosed only one-half of the true purchase price, and that another invoice among the papers (exhibit 1) reflected the actual price paid for this merchandise. The witness stated that he assumed the other invoices in the file of documents were copies of the invoice represented by exhibit 2. He testified that the first time he learned that the invoices showed different values and that he had sent the customs broker an invoice showing only one-half of the true purchase price was when the broker informed him that the goods had been seized, and he then found among the papers an invoice showing the actual purchase price paid for this merchandise. He stated that there was no intention on his part, or on that of Massce & Co., to defraud the revenue of the United States or to withhold any information from the appraiser.

The second witness called to testify on behalf of the petitioners, a motion-picture art director employed by Loew's, Inc., stated that he was sent to Mexico to purchase the merchandise before us in connection with the production of a motion picture being made at that time and that the goods were shipped after his return to the United States, and that prior to the arrival of the goods in the United States he did not have any conversations with Mr. Barnett or anybody in the office of Massce & Co., or with the customs broker. He stated that it was not the intention of Loew's, Inc., to defraud the revenue of the United States or to misrepresent any facts to the appraiser. On cross-examination, the witness stated that the correct purchase price paid for the merchandise herein is reflected in exhibit 1 and that the prices at which entry was made are indicated in exhibit 2. The witness stated that exhibit 3 for identification, a letter written in Spanish, is a request from one of the men in the moving-picture firm's office in Mexico City to one Pedro Iturbide asking him to clear the shipment of these huaraches and that this letter mentions the total purchase price as indicated in exhibit 1. He then stated that his company furnished Massce & Co. with the original bill of lading and invoices as made out in Mexico City, among which was the invoice represented by exhibit 1, and that exhibit 2 represents another invoice which was made out by the Mexican broker to expedite the shipment of rubber in the merchandise herein and to clear Government requirements in Mexico, which limited the amount of rubber permitted for export, and that the invoice showing the lower price was made out "for the purpose of fooling the Mexican Government" and that "the Mexican Government knows it goes on" (R. 19). The witness further stated that exhibit 4 is an official receipt for this merchandise and that the total price on the official receipt from the Mexican Government

conforms with the total purchase price in this importation as represented by exhibit 1 and not as represented by exhibit 2 (R. 20).

The witness Duncan, a customs agent at the time of the importation herein, testified that during the course of an investigation regarding this shipment he obtained the documents represented by exhibits 1, 2, 3, and 4 from the files of Massce & Co., and that the invoices therein were on the top of all the other documents. He testified that Mr. Barnett stated that these documents were in his files at the time he instructed the customs broker to make entry, and that when asked for an explanation why he submitted an invoice to the broker for entry purposes which reflected one-half of the actual value when he had receipts for the actual amount he paid for the merchandise, Mr. Barnett explained that because of so many copies he did not pay attention to what he was supplying the broker and inadvertently supplied him with the invoice which covered the lower value. The witness then stated that subsequently he questioned Mr. Pye concerning the prices paid for this merchandise and that Mr. Pye stated that the prices paid were as represented on the invoice indicated as exhibit 1. The witness Barnett of Massce & Co. testified that prior to the arrival of the shipment at bar on March 21, 1945, he had received invoices like exhibits 1 and 2 from the broker in Mexico, and not from the witness Pye, who purchased these huaraches for the petitioner, Loew's, Inc. However, the record discloses the fact that Mr. Pye furnished Massce & Co., with a bill of lading as well as an invoice such as exhibit 1 (R. 18) which disclosed the actual purchase price of the merchandise. Despite the fact that the true invoice (exhibit 1) was in the possession of both the witness Pye and the forwarding agent, the invoice (exhibit 2) showing the lower price was sent to the customs brokerage firm. All the facts, therefore, within the knowledge of the petitioner, Loew's, Inc., or its representative, were not disclosed to the customs officials prior to, or at the time of entry, and such disclosure is a requirement before relief may be granted under this petition.

Although the witness Pye stated that he had no conversation with anyone in Massce's office prior to the arrival of the goods, the witness Barnett testified that when the documents were received from the broker in Mexico, his firm called Loew's, Inc., which advised the forwarding agent to pay the duty, but the record is silent as to whether there was any conversation concerning the true purchase price. The petitioner, Loew's, Inc., however, did have knowledge of the true purchase price of the merchandise at the time entry was made. There is nothing in the record before us to indicate what steps were taken by the broker who filed the petition herein to ascertain the true value of the imported merchandise. Exhibit 3 for identification, discovered by the customs agent in the files of the witness Pye, disclosed the true purchase price and the customs agent testified that Mr Pye admitted that he paid the price as indicated in exhibit 1. It may also be observed in passing that an official receipt of the Mexican Government for a tax based upon the true purchase price (exhibit 4) was also discovered by the customs agent during the course of his investigation which would seem to dispute the statement that exhibit 2 was prepared to fool the Mexican Government. Inasmuch as the Mexican Government was paid on the true purchase price, the reason for exhibit 2 being in the files of the forwarding agent and the so-called "errors" of both the Mexican broker in forwarding exhibit 2, and of the forwarding agent in sending the incorrect invoice to the customs broker are not satisfactorily explained.

Upon the record before us we are unable to find that the petitioner herein has established by satisfactory evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petition is therefore denied.